JANVIER, Judge.
On Saturday afternoon, January 5, 1957, just before the seventh and feature horse race of the afternoon, plaintiff, John E., Scott, aged 86 at the time and who was a patron of the Fair Grounds Corporation of New Orleans, while standing in a position provided by the said corporation for its spectators, was jostled or bumped by another person, and falling to the floor over a bench, sustained physical injury.
Alleging that he had been seriously injured and that the accident had resulted' from negligence of the said corporation iij> several particulars, Scott brought this ac. tion against the corporation and against its liability insurer, Fireman’s Fund Insurance Company, praying for judgment in the sum of $7,618.08. He prayed for trial by jury. He charged that the corporation was negligent in that it failed to provide a sufficient number of policemen or other attendants who might have prevented such an accident ; that it failed to provide any handrail' or other support which may have been available to him; that it failed to provide cushions or other protection on the benches, and in general that it failed to provide a safe place for its customers and guests to view the races.
*765 The defendants filed exceptions of no cause of action which was overruled.- They then filed answer denying that there had been any negligence on the part of the Fair Grounds Corporation, and averred that the cause of the accident had been carelessness and negligence on the part of plaintiff himself in the following particulars: That he failed to make use of a seat which was available; that he stood in a place where patrons continuously moved about; that he failed to observe the approach of the unknown person who may have bumped into him and that he failed to avoid being struck by that person; that he was negligent in attending, “at his advanced age, a sporting exhibition at which he knew or should have expected a large assemblage of persons to congregate and excitement to prevail.”
In the alternative that it might appear that there was any negligence on the part of the Fair Grounds Corporation, contributory negligence was specially pleaded.
After a trial there was a jury verdict in favor of plaintiff in the sum of $6,618.08. Judgment was based on this verdict. Defendants have appealed and plaintiff has answered the appeal praying that the award be increased to the amount originally prayed for, $7,618.08.
Only one of the charges of negligence deserves more than passing consideration. This is the charge that the corporation failed to provide adequate policing by either city police or private employees and that, had there been enough such police or employees, the accident might have been prevented. The other charges are in our opinion obviously frivolous.
It is evident that it would not be possible at such a place to provide handrails for all spectators who might desire to stand. There were seats available and plaintiff stated that he was standing near a seat, which was not occupied, and that he could have seated himself on it if he had desired to do so.
Equally frivolous is the charge that it was negligence to fail to provide cushions on the seats. The photograph shows that there was nothing defective about the seats and it is certainly not required that in such places all seats be padded.
The charge that the corporation failed to provide a safe place is merely a general charge and the photograph shows that the place provided for the plaintiff and other spectators was entirely safe and adequate unless it was made unsafe by the fact that there were not sufficient policemen or other attendants.
The charge that there were not sufficient police or other attendants is based on the fact that the general manager of the corporation contradicted himself to some extent in that he at first testified that he had no record of which attendants or police officers may have been in that particular area at the time of the occurrence, and that he later stated that there were at least three attendants and at least three ushers in or near the finish line at the race track which was directly in front of the concourse in which plaintiff stood.
Counsel for plaintiff further argue that the failure to produce any of those attendants or police officers as witnesses raises the presumption that the testimony of any of them would have been unfavorable. It is argued that since the accident occurred on a Saturday at a time at which the attendance was much greater than on other days, there being approximately 13,000 persons present, there should have been additional guards and that these additional guards would have prevented any one or more of the patrons from jostling or running into others.
There is no evidence as to just how the accident occurred, or as to just where the other patron who jostled the plaintiff came from, or as to just how long the resulting commotion continued. Neither plaintiff nor either of his nieces who were with him could give any real information as to just *766 how the accident occurred. Plaintiff himself said that he did not know where the' other person came from; that, as a matter of fact, he only gave him a “side glance”. He stated also that he had no reason to anticipate that any one “would come busting up there running.”
Considerable evidence was admitted on the question of whether or not there had been other similar accidents within the few years preceding this particular occurrence. Whether that evidence was admissible is to some extent doubtful because of the decision of our Supreme Court in Cassanova v. Paramount-Richards Theatres, 204 La. 813, 16 So.2d 444, 446. There the Court held that the introduction of such evidence would “lead to complications and the raising of numerous collateral issues” for the reason that parties would then be under the necessity of proving that prior accidents, if any, had not been caused by the conditions complained of in the suit at bar, and evidence by both parties would have to be introduced “ad infinitum.”
However, here the evidence sought to be introduced was sought by plaintiff in an effort to prove that there had been other similar accidents and the testimony adduced showed that, as a matter of fact, during the several years preceding the occurrence there had been no accidents caused by negligence of the patrons running into others.
Plaintiff himself admitted in his pre-trial testimony that he had no knowledge of other similar accidents. In his testimony at the trial itself he was asked whether, in the 50 years in which he had attended race tracks, he had known of any similar accident and he answered that he could not remember “directly.” He was then asked whether he had ever seen anyone knocked or pushed down in the stands at any time prior to the time at which he was injured and he answered: “Yes sir, I have seen it.” However, he then admitted that in the pre-trial deposition which he had signed he had been asked whether he knew of any person who had been pushed down while standing in the stands at the Fair Grounds and he answered: “No, I do not.”
That the fall of plaintiff created only a very slight disturbance or commotion is made very evident by the fact that he says that the commotion existed only from one to three minutes; that he was immediately picked up by two men, one on each side of him; that he did not know that he had been hurt to any serious extent, and that he stayed to witness the following race standing on his feet and not taking a seat on the bench near by.
We fail to see the slightest negligence on the part of the defendant corporation. It is, of course, possible that if an attendant had been standing immediately alongside plaintiff when the other person ran through the crowd, he might have been able to prevent the accident, but to hold that the defendant was negligent in not providing an attendant immediately alongside plaintiff would be tantamount to holding that an attendant should be provided for almost every one of the 13,000 spectators who were present on that occasion.
We can reach no other conclusion than that there was no actionable negligence on the part of the officers or employees of the defendant corporation. The statement made by the Appellate Division of the Supreme Court of New York in Futterer v. Saratoga Ass’n for Improvement of Breed of Horses, 262 App.Div. 675, 31 N.Y.S.2d 108, 109, is remarkably applicable to the situation found here. There the Court said:
“Unfortunate as the accident may have been we think the plaintiff failed to make out a case sufficient to sustain the verdict. Patrons are generally permitted the freedom of the grandstand and move freely in and out. The sport of horse racing apparently renders this both desirable and inevitable. The ardor of those patrons who desire to place bets somewhere below the grandstand would naturally incline them at times to be impatient and hasty in their move *767 ments. To control their movements so as to prevent them from hurrying along an aisle would be impossible without a guard for every patron. A certain amount of jostling under such circumstances is an ordinary risk of attendance at such a sport. * * * ”
We feel that the verdict of the jury and the judgment based thereon are manifestly erroneous.
The judgment appealed from is annulled, avoided and reversed and the suit of plaintiff is dismissed at his cost.
Reversed.