liBOWES, Judge.
Plaintiff, Linda Galan, filed suit for personal injury sustained while attending a “haunted house” operated by defendants. The defendants filed a motion for summary judgment, which was granted by the trial court. Plaintiff appeals. We affirm.

FACTS

On October 31, 1990, plaintiff took her minor daughter and two of her daughter’s friends to a Halloween haunted house, which was sponsored by the defendants. The haunted house was located at Lakeside Shopping Center.
hWhen visiting the haunted house, the patrons would enter the shopping center, and then proceeded upstairs to the second floor. The entrance to the house itself, where the patrons purchased their tickets, was located on the second floor. After purchasing the tickets, the patrons were divided into groups of eight to fifteen and escorted by group leaders into and through the “rooms” of the attraction. The patrons were then escorted down a flight of stairs, and to an “exit” door. The group leaders would then thank the patrons for coming, and the patrons would continue, unescorted, down an “alleyway” with a brick wall on the left side, and a visqueen covered fence on the right.
A participant of the haunted house, dressed as “Jason” (a character from a horror movie) hid behind the visqueen covered fence. As the patrons proceeded down this “alleyway,” “Jason” would start up a chain saw, for the purpose of frightening the patrons one last time. A barricade was located at the end of the “alleyway” to prevent patrons from running out into the parking lot. In addition, there were police officers sta *1008 tioned at both the entrance and the exit to the haunted house, as well as throughout the haunted house itself.
Plaintiff had traveled through the haunted house, and was in the process of walking down the “alleyway” when “Jason” started his chain saw and came out from behind the visqueen. The noise from the chain saw startled or frightened plaintiff, causing her to fall down and strike her head. LThe police officer at the exit assisted her in getting back up, and she left the shopping center. The next day, she awoke in severe pain, causing her to go to a hospital emergency room for treatment. She alleges that as a result of the fall, she sustained back and head injuries.
Plaintiff filed this suit alleging that the defendants breached their duty and created an unreasonably dangerous risk of harm by placing their last exhibit outside of the exit to the haunted house, at a point where patrons would no longer expect to be frightened. This breach of duty caused the plaintiff to fall, resulting in injury.

ANALYSIS

A motion for summary judgment shall be granted when the mover establishes that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law, based on the pleadings, affidavits, depositions and discovery documents in the record. La. C.C.P. art. 966. A material fact is one whose existence or nonexistence may be essential to plaintiffs cause of action under the applicable theory of recovery, that is, one that would matter on the trial of the merits.
A genuine issue is a triable issue. Whitney Nat. Bank v. Rockwell, 94-3049 (La.10/16/95), 661 So.2d 1325. The mover for summary judgment bears the burden of establishing that no material factual issue exists. Guillory v. Interstate Gas Station, 94-1767 (La.3/30/95), 653 So.2d 1152. “Only when reasonable minds must inevitably conclude that 14the mover is entitled to judgment as a matter of law on the facts before the court is a summary judgment warranted.” Baker v. Maclay Properties Co., 94-1529 (La.1/17/95), 648 So.2d 888, 893; Reynolds v. Select Properties, Ltd., 93-1480 (La.4/11/94), 634 So.2d 1180, 1183. An appellate court will review a summary judgment de novo using the same criteria used by the district court which determined summary judgment was appropriate. Baker, supra; Reynolds, supra
The law relative to the duty owed to the patrons of a hunted house was recently summarized by this court in Mays v. Gretna Athletic Boosters, Inc., 95-717 (La.App. 5 Cir. 1/17/96), 668 So.2d 1207,1208:
It is well settled that assumption of the risk is no longer a valid defense under Louisiana law and that the plaintiffs knowledge and conduct are considered only to determine the extent of his comparative negligence. Thus, as set forth in Murray [infra], a duty/risk analysis is first used to determine if the defendant is liable to plaintiff. Where there is no duty on the part of the defendant to protect the plaintiff from the risk involved, there can be no liability under a duty/risk analysis. The scope of the duty is a question of law and based on policy questions as to whether the particular risk falls within the scope of the duty. The key to a finding of no liability is not the plaintiffs subjective awareness of the risk, but the determination that the defendant did not act unreasonably vis-a-vis the plaintiff, or injure the plaintiff through the instrumentality oí an unreasonably dangerous thing in his custody.
As in premises used for athletic events, the owner or occupier of a Halloween haunted house is not the insurer of those participating in the event nor is he required to eliminate every source of the possibility liiof danger. A party’s obligation to participants is to maintain the premises in a fashion commensurate with ordinary and reasonably care.
[Emphasis supplied, citations omitted].
Plaintiff argues that a genuine issue of fact exists as to whether the placement of the last exhibit, placed outside the “exit door” of the haunted house created an unreasonable risk of harm. We disagree.
Plaintiff admits that the purpose of a haunted house is to frighten its patrons. She also admits that she was in a visqueen eov- *1009 ered “alleyway” exiting the haunted house when the incident occurred. She stated in deposition that she had exited a door and the group leader had said good-bye, thanking the patrons for coining and, therefore, she did not expect the last exhibit, located in this “alleyway.” It appears to be plaintiffs contention that this last exhibit, because it was unexpected, created an unreasonable risk of harm. However, the very purpose of a haunted house is to frighten its patrons. As the court stated in Mays, supra at 1209:
Patrons in a Halloween haunted house are expected to be surprised, startled and scared by the exhibits but the operator does not have a duty to guard against patrons reacting in bizarre, frightened and unpredictable ways.
Furthermore, the fact that the plaintiff did not expect this last exhibit does not mandate that the exhibit is unreasonable. “A defendant’s duty does not turn on a particular plaintiffs state of mind, but instead is determined by the standard of care which the defendant owes to all potential plaintiffs.” Murray v. Ramada Inns, Inc., 521 So.2d 1123, 1136 (La.1988); Politz v. Recreation and Park Com’n, 619 So.2d 1089, 1095 (La.App. 1 Cir.1993), writ denied, 627 So.2d 653 (La.1993); Hendry v. U.S. Fidelity & Guar. Ins. Co., 594 So.2d 584, 585 (La.App. 5 Cir.1992), unit den. 600 So.2d 610 (La.1992).
Accordingly, we find no breach of duty on the part of defendant by its actions in placing the last exhibit in the visqueen walled alleyway exiting the haunted house because defendant owed no duty to plaintiff to guard against her reactions at any point while in the attraction. Therefore, the trial judge did not err in granting defendant’s motion for summary judgment.

CONCLUSION

For the above discussed reasons, the judgment of the trial court is affirmed. All costs are assessed against plaintiff/appellant.
AFFIRMED.